USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE LAUNDRY DRY CLEANING
WORKERS AND ALLIED RETIREMENT FUND,
WORKERS UNITED,

    -against-

OCEANSIDE INTERNATIONAL INDUSTRIES,
INC., ET. AL.,

                  Defendant.

No. 16-CV-06194 (NSR)
ORDER

Plaintiff, Trustees of the Laundry Dry Cleaning Workers and Allied Retirement Fund, Workers United (the "Fund"), commenced the instant action seeking to compel Defendant, Oceanside International Industries, Inc. ("Defendant" or "Oceanside"), an employer, to make withdrawal liability payments pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 through 1405 and 1451. Following joinder of issue, Defendant moved for an order relieving it from its obligation to make payments, pending arbitration. Plaintiff opposes the application. For the following reasons, the motion is DENIED.

## BACKGROUND

The facts of the case are derived from the pleadings and from the respective party's submissions in support of and in opposition to the motion.

Plaintiff maintains an employee pension plan (the "Plan") to provide retirement income to employees for whom contributions are made by employers. The Plan is maintained pursuant to one or more collective bargaining agreements between employee organizations and various employers, which require employers to contribute to the Fund. As such, the Fund is a

1

"multiemployer plan," within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Defendant has been a signatory to a series of collective bargaining agreements, which required it to make contributions to the Fund. (Affidavit in Support of Motion, Francine Boyle). Believing it would cease operations in June 2016, Defendant notified Plaintiff of its intention. *Id.*

Upon declaring its intention to cease operations, Plaintiff alleges that Defendant became obligated to contribute to the Fund, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381(a), for withdrawal liability in the principal amount of $770,519.00. Plaintiff purportedly notified Defendant of the withdrawal liability, of the schedule for withdrawal liability payments, and demanded payment in accordance with the schedule ("Notice and Demand"), as required by Sections 4202 and 4219(b)(l) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(l). Defendant seeks a stay of its obligation to make interim withdrawal liability payments, pending arbitration, on the basis that its obligation to make interim payments has not been triggered because Defendant has not yet ceased operations as originally scheduled, the amount allegedly due is incorrect, and requiring it to make payments would be a financial hardship.

## STANDARD OF REVIEW

ERISA was enacted:

> to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans. Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.

*Pension Benefit Guaranty Corp. v. R.A. Gray and Co.*, 467 U.S. 717, 720 (1984) (internal quotation marks and citations omitted). ERISA is a "pay-first-question-later" statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to

2

the assessment of liability. *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5–6 (E.D.N.Y. 2001) citing *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 882 (2d Cir.1988).

MPPAA was enacted to enhance the protections afforded to plans through ERISA from the adverse consequences that resulted when individual employers terminate their participation in, or withdraw from, multiemployer plans." *Pension Benefit Guaranty Corp.*, 467 U.S. at 722. The statute was designed to dis-incentivize employers to withdraw from multiemployer plans and to lessen the impact and burdens on plans when employers do withdraw. *Id.* at 724, n.3. The statute "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the plan amounting to the employer's proportionate share of the plan's unfunded vested benefits." *Id.* at 717. The withdrawal liability amount is "calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Id.* at 725 (citations omitted).

An employer completely withdraws from a plan when it: "(1) permanently ceases to have an obligation to contribute to a plan or (2) permanently ceases all covered operations under a plan." 29 U.S.C. § 1383(a); *ILGWU Nat. Ret. Fund*, 846 F.2d at 881. Whether an employer has withdrawn from a multiemployer plan is a factual dispute within the scope of the MPPAA that must be arbitrated. 29 U.S.C. § 1401; *New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transportation Co.*, 848 F.2d 20, 21 (2d Cir. 1988). When an employer withdraws from a multiemployer plan, the entity maintaining the plan must determine the amount of the employer's withdrawal liability, notify the employer of the amount, and make a demand for payment. 29 U.S.C. § 1382. Once the employer receives notice of the demand, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."

29 U.S.C. § 1399(c)(2); *Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03 CIV. 4530 (PKC), 2004 WL 67480, at *3 (S.D.N.Y. Jan. 15, 2004); *Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (citations omitted).

## DISCUSSION

In support of its motion, Defendant submits the affidavit of Francine Boyle ("Boyle"), the Director of Human Resources for Oceanside. Boyle avers that Defendant "has been signatory to a series of collective bargaining agreements which required it to make contributions to the Trustees of the Laundry Cleaning Workers and Allied Retirement Fund, Workers United ('Fund')." While conceding that Oceanside notified the Fund of its intention to cease operations, Boyle avers that the notification indicated Oceanside would cease operation "in the near future." Boyle also asserts that "if Oceanside is forced to make the remaining interim withdrawal liability payments ... either one (1) or more principals will be forced to sell personal assets and/or waive all of Oceanside's defenses and lose the ability to obtain a proper calculation of Oceanside's eventual actual liability owed to the fund." Boyle further avers that the payments made to date exceed Oceanside's liability since it is entitled to multiple exemptions.

As previously mentioned, ERISA is a "pay-first-question-later" statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability. *Rao*, 149 F. Supp. 2d at 5–6 (citations omitted). To the extent Defendant calls into question what amount, if any is due the Fund, such disputed fact is subject to arbitration. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1); see *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 197 (1997) ("Even if the employer challenges the trustees' withdrawal liability determination, however, it still must pay according to the trustees' schedule in the interim under the statute's "'pay now, dispute later'

4

collection procedure." *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986) (per curiam)).

To the extent Defendant is seeking an equitable exception to the requirement to make interim payments, such application is denied. The statute provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor …beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). The use of the phrase "shall be payable" leaves little discretion. Nor does Defendant cite to any statutory provision or Second Circuit precedent which would lead to a different conclusion.[1]

Two circuit courts have recognized the equitable exception. In *Robbins v. McNicholas Transportation Company*, 819 F.2d 682, 685 (7th Cir. 1987), the employer sought an exception from its obligation to make withdraw liability payments based on economic hardship. The employer asserted that compelling it to make the payments would result in "severe financial hardship and essentially preclude its resumption of operations." *Id.* The Court held that where a trustee of a plan brings an action to compel withdraw liability payments, pending arbitration, courts should consider the probability of the employer's success in defeating liability. *Id.* The Court reasoned that "[d]epending on the facts of the particular case, there can be unfairness and injury not likely intended by Congress in compelling interim payments." *Id.* Accordingly, courts should consider the employer's probability of success before the arbitrator and the gravity of any economic hardship caused by payments of the installments while awaiting the arbitrator's decision. *Id.*

---

[1] The Second Circuit has yet to rule on the issue. See *Trustees of Amalgamated Ins. Fund*, 2004 WL 67480, at *4.

Similarly, in *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Mar-Len, Inc.*, 30 F.3d 621, 626 (5th Cir. 1994), the Court held that a "district court has the narrow measure of discretion to excuse the employer from making interim withdrawal liability payments." The discretion is limited to permitting the reviewing court to determine whether the pension plan's claim is non-frivolous and colorable. *Id.* Relying on *McNicholas*, the Court held:

> "If the claim for withdrawal liability is colorable, the employer must make interim payments while it contests the underlying liability. If, on the other hand, the claim is frivolous or non-colorable, the district court has the narrow measure of discretion to excuse the employer from making interim withdrawal liability payments."

*Id.* (internal citation omitted).

While not adopting the equitable exception to interim withdrawal liability payments, the Court notes Defendant has failed to demonstrate that Plaintiff's claims are either frivolous or non-colorable. At best, Defendant attempts to demonstrate that the actual indebtedness is less than that requested or asserted by Plaintiff. Such a showing does not make a claim frivolous.

## CONCLUSION

For all the reasons cited above, Defendant's motion to stay interim payment of withdrawal liability is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 23. This constitutes the Court's Opinion and Order.

SO ORDERED.

Dated: March 27, 2018
White Plains, NY

NELSON S. ROMÁN
United States District Judge,
S.D.N.Y.